UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KEVIN K. FULLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:05-cv-029-RLY-WGH |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM DECISION AND ORDER

### I. Statement of the Case

Plaintiff, Kevin K. Fuller, seeks judicial review of a final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1382(c); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB and SSI on January 22, 2003, alleging disability since August 30, 2002.[1] (R. 75-77, 191-93). The agency denied Plaintiff's application both initially and on reconsideration. (R. 52-53). Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on June 23, 2004. (R. 201-26). Plaintiff was represented at the hearing by his attorney, Eric J. Yocum. (R. 201). Also testifying

---

[1] Plaintiff filed a prior application for DIB benefits which was denied on August 30, 2002. (R. 26). That decision is *res judicata* pursuant to 20 C.F.R. § 416.1457. Plaintiff is, therefore, entitled to benefits, if any, beginning on August 31, 2002.

was a vocational expert ("VE"). The ALJ issued a decision on August 13, 2004, finding that plaintiff was not disabled because he was able to perform jobs existing in significant numbers in the economy. (R. 23-35). The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review on December 7, 2004. (R. 4-6). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a complaint on February 7, 2005, seeking judicial review of the ALJ's decision.

## II. Statement of Facts

### A. Vocational Profile

Plaintiff was 47 years old at the time of the ALJ's decision. (R. 14). He had a high school education and two years of vocational training, and his past work experience included work as an electrical specialist, an inventory worker, a parts stripper, a handy man, and a grass mower. (R. 14).

### B. Plaintiff's Testimony and Other Statements

At the administrative hearing, conducted June 23, 2004, plaintiff testified that he suffered from numerous ailments. Records indicate that Plaintiff claims he suffers from chronic pain, seizures, chronic obstructive pulmonary disease ("COPD"), acid reflux, lower extremity neuropathy, osteoarthritis, asthma, epilepsy, a deformed knee, and a herniated disc. (R. 92). Plaintiff testified that his back pain had been very severe, that it had gotten better after surgery in 2001, but that it had gotten progressively worse since shortly after the surgery. (R. 219). Plaintiff also explained that he had been working until January 22, 2003, when his company changed locations. (R. 212). He said that he

tried to get a ride to the new location and even worked at the new location temporarily, but that his leg went numb shortly thereafter and he could no longer continue to work. (R. 204).

Regarding his daily activities, Plaintiff testified that he could lift a gallon of milk. (R. 216). He explained that he needed a cane if he were to walk any farther than across a room. (R. 217). Plaintiff testified that he could cook, do laundry, clean, shop for groceries, and do the dishes, but that he was only able to stand for a few minutes at a time so he could only perform these chores slowly. (R. 214). Plaintiff also explained that he mowed lawns for his landlord on a riding lawnmower. (R. 214-15). Plaintiff does have a driver's license, but he testified that he was advised by his doctor to only drive in the event of an emergency. (R. 215). His testimony also indicates that he had smoked and drank in the past, but no longer engages in those activities. (R. 215). Finally, Plaintiff explained that he spends most of his days just lying down. (R. 218).

### C.  Vocational Expert Testimony

At the administrative hearing, VE, Dr. Thomas Mehaffey, testified regarding Plaintiff's capabilities. Dr. Mehaffey placed Plaintiff's past work into several categories. Plaintiff's past work as a handyman and an inventory worker are both categorized as medium, semi-skilled work. (R. 223). Plaintiff's job as an electronics technician is skilled, light work, while mowing lawns is classified as unskilled medium work. (R. 223). He continued by explaining that a person of Plaintiff's age and vocational history with only minor postural limitations could perform the following jobs in the regional

economy: 500 electrical inspection jobs, 20,000 packaging jobs, 11,000 inspection jobs, 30,000 assembly jobs, 38,000 cashier jobs, and 15,000 sales clerk jobs. (R. 223-24). The VE went on to explain that, if Plaintiff were limited to sedentary work, he could work in 2,000 packaging jobs, 1,500 inspection jobs, 6,000 jobs as an assembler, 5,000 receptionst-type jobs, and 6,000 office clerk jobs. (R. 224). The VE also opined that if Plaintiff's complaints of pain were found to be credible, then he could not perform any jobs. (R. 224). And, the VE explained that if Dr. Skagg's assessment of Plaintiff was accurate, then Plaintiff could not perform any jobs. (R. 224).

**D.     Medical Evidence**

Between September 2002 and February 2004, Plaintiff received treatment from Homer Skaggs, M.D. (R. 139-68, 176-90). Dr. Skaggs generally treated Plaintiff for complaints of chronic back pain with muscle cramps, seizures, chronic obstructive pulmonary disease/asthma, leg pain and cramps, left knee pain and osteoarthritis, paresthesia/peripheral neuropathy, and anxiety. He prescribed medications for these conditions. In September and twice in October 2002, Dr. Skaggs noted Plaintiff's prognosis as "Good" and did not note any difficulty walking or any leg pain or neurological/orthopedic abnormalities. (R. 161, 163, 165). Then, in late October 2002, Dr. Skaggs, who still did not note any neurological or orthopedic abnormalities, noted Plaintiff's prognosis as "Fair." (R. 159).

Between November 2002 and April 2003, Dr. Skaggs generally noted Plaintiff's prognosis as "Good." (R. 147-48, 151, 153, 155, 157, 166). He noted no neurological or

orthopedic abnormalities during that time, except for a fractured left knee and paresthesias and locking up of toes in December 2002. (R. 147-48, 151, 153, 155, 157, 166). In January 2003, Dr. Skaggs noted that Plaintiff complained of sitting pain and neurological leg pain, and he recorded a diagnosis of lower extremity peripheral neuropathy. (R. 150-53). Dr. Skaggs recorded throughout his notes that Plaintiff walked without an assistive device. (R. 143-44, 147-48, 151, 153, 155, 157, 159, 161, 163, 165-66).

In February 2003, Dr. Skaggs stated that Plaintiff was unable to return to work for an indefinite period, as he was permanently and totally disabled. (R. 190). On May 22, 2003, Dr. Skaggs noted that Plaintiff's prognosis was "Good" and did not note any neurological or orthopedic abnormalities. (R. 144). He diagnosed left leg pain, multiple joint pain, COPD/asthma, anxiety, peripheral neuropathy, seizures, reflux, and prescribed medications for these conditions. He noted he was to fill out forms for Plaintiff and that he should return for a follow-up in one week. (R. 144). Plaintiff returned for his next appointment over one month later, on June 27, 2003, and Dr. Skaggs again noted his prognosis as "Good." (R. 143).

On May 28, 2003, Dr. Skaggs stated his opinion of Plaintiff's abilities to perform work related activities. (R. 139-42). He said Plaintiff could lift and carry up to ten pounds maximum and less than ten pounds frequently. (R. 139). He said Plaintiff could stand, walk, and sit for less than one hour each at a time and less than one hour each total in an eight hour workday. Dr. Skaggs said Plaintiff could sit and stand alternately

without lying down for less than one hour in an eight hour day, and would need bed rest eight hours in an eight hour workday. (R. 139). He also said Plaintiff had to be at about a thirty degree angle when lying down in a recliner. (R. 139). Dr. Skaggs stated that Plaintiff was capable of performing all postural activities occasionally. (R. 140). He said Plaintiff should not work around hazards such as unprotected heights and around moving machinery because he was epileptic, or around sudden changes in temperature because he had difficulty breathing. He also said Plaintiff should drive only in a medical emergency (other than seizures). (R. 140). Dr. Skaggs said he thought Plaintiff's pain was debilitating and that it would interfere with his concentration on a constant basis. (R. 141).

In September 2003, Dr. Skaggs treated Plaintiff for complaints of multiple joint pain, nervousness, seizures, COPD, and reflux. (R. 188-89). Dr. Skaggs diagnosed rheumatoid arthritis of the knees, ankles, and shoulders, and prescribed medications for these conditions. (R. 189). Between September 2003 and February 2004, Dr. Skaggs prescribed medications and noted that Plaintiff walked without an assistive device, that there were no neurological or orthopedic abnormalities on examination, and that Plaintiff's prognosis was "Good." (R. 177, 179, 181, 183, 185, 187, 189). In November and December 2003, Dr. Skaggs diagnosed Plaintiff with diverticulitis of the colon. (R. 183, 185).

On March 18, 2003, Plaintiff underwent a consultative evaluation by Phillip Budzenski, M.D. (R. 169-75). Plaintiff said he last worked full-time February 18, 2002,

when his company moved to a new location. (R. 170). Plaintiff reported a history of disc herniation with surgical repair and physical therapy in 2001. (R. 169). He said his symptoms had resolved completely at the time of his surgery and physical therapy. Plaintiff complained of pain and limpness in both of his legs. (R. 169). He also reported leg pain, shortness of breath, and back pain after ambulating for between five and ten minutes. (R. 170). He reported that he sometimes had shortness of breath at rest that felt like a panic sensation. Plaintiff also said he had seizures that were well-controlled with medication. (R. 169). Plaintiff said he was able to perform basic activities of daily living. (R. 170).

    On examination, Plaintiff walked with an antalgic gait involving his left lower extremity; he had a cane, but did not require it for ambulation. (R. 171). There was no tenderness or spasm of the cervical spine, and flexion and extension were normal. (R. 172). There was no spasm or tenderness of the dorsolumbar spine, and flexion, extension, lateral bend, and rotation were normal. Straight leg raising testing was normal. Examination of the shoulders, arms, elbows, and wrists was normal. (R. 172). Grip strength was normal with no hand atrophy, and Plaintiff was able to perform manipulative actions. Hips, knees, feet, and ankles had no tenderness or atrophy. (R. 172-73). Hip range of motion was normal. Sensation was intact, reflexes were brisk and symmetrical, motor strength was normal throughout. (R. 173). Plaintiff was unable to describe his seizures, but Dr. Budzenski noted that he said he had pretty good control and that they onset while he was drinking large amounts of alcohol. (R. 173-74). Plaintiff refused an

evaluation of his posture, motor, and gait, and refused to attempt squatting, rising up on toes and heels, walking on toes and heels, or tandem walking. (R. 173-74). Dr. Budzenski concluded that Plaintiff's lumbar range of motion was well preserved, deep tendon reflexes were brisk, sensory, and motor modalities were preserved, and there was no clinical evidence of nerve root impingement. (R. 174).

Dr. Budzenski opined that Plaintiff could work eight hours in a seated position and tolerate fifteen minutes of standing in one place each hour. (R. 174). He said Plaintiff had full use of his upper extremities bilaterally, in terms of grasping, pushing, pulling, or manipulating ten pounds continuously and twenty pounds occasionally; and had full use of his lower extremities for operating foot controls. (R. 174). Dr. Budzenski said there was no objective evidence of an inability to bend and squat, but that Plaintiff would be poorly tolerant of crawling, climbing, or working around unprotected heights. (R. 174).

On April 4, 2003, a state agency physician, J. Sands, M.D., reviewed the record and concluded that Plaintiff had no exertional limitations but could only occasionally climb ramps and stairs and should never balance or climb ladders, ropes, or scaffolds. (R. 128-35). On July 24, 2003, another state agency physician, J. Corcoran, M.D., reviewed the record and affirmed Dr. Sands's assessment. On July 26, 2003, a state agency psychologist, J. Pressner, Ph.D., reviewed the record and concluded that Plaintiff did not have a medically determinable mental impairment. (R. 125-27).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see also *Perkins v. Chater*, 107 F. 3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Richardson*, 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits.  *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.

*See* 20 C.F.R. § 416.920. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ, Scott T. Miller, concluded that Plaintiff met the special earnings requirements of the Act through the date of his decision, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 21). The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), Plaintiff had several impairments that were severe including COPD/asthma, reflux, osteoarthritis and degenerative joint disease of several joints, neuropathy of the lower extremities, and a seizure disorder. (R. 21). But, the ALJ determined that none of these impairments met or medically equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). The ALJ further found that Plaintiff's complaints of pain were not fully credible. The ALJ thereafter determined that Plaintiff retained the residual functional capacity to perform sedentary work, but that Plaintiff could perform no postural activities on more than an occasional basis. (R. 21). Based on these limitations, the ALJ concluded that

Plaintiff could not perform any of his past work. (R. 22). However, the ALJ determined that Plaintiff could still perform a significant range of sedentary work and that there were a substantial number of jobs in the regional economy that Plaintiff could perform. The ALJ concluded by finding that plaintiff was not under a disability. (R. 22).

## VI.  The Issues

Plaintiff has raised several issues to be determined by this court. The issues are as follows:

1. Whether the ALJ failed to include a complete record of Plaintiff's medical treatment.

2. Whether the ALJ failed to give proper weight to Plaintiff's treating physician.

3. Whether the ALJ's decision failed to properly analyze Plaintiff's subjective complaints of pain.

4. Whether the Vocational Expert's testimony was improper.

**Issue 1:    Whether the ALJ failed to include a complete record of Plaintiff's medical treatment**

Plaintiff's first argument is that the ALJ failed to include several medical records as part of the administrative record. However, the court has previously noted in footnote 1 above that Plaintiff previously applied for disability benefits, and that request was denied by an ALJ on August 30, 2002. Therefore, the relevant time frame for this decision was August 31, 2002, and beyond. When a prior decision has already been rendered, an ALJ is not obligated to return to the medical evidence from the previous

hearing. *See Groves v. Apfel*, 148 F.3d 809 (7th Cir. 1998). In fact, based on the principle of collateral estoppel, an ALJ is actually not permitted to rely on medical evidence from a previous hearing unless there has been new evidence presented that suggests that the plaintiff's condition has deteriorated. *Robbins v. Secretary of Health and Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990). In this instance, Plaintiff has presented no evidence in the way of objective medical tests that suggest that Plaintiff's condition has deteriorated. Thus, the ALJ's reliance on only those medical records for the relevant time period after August 30, 2002, was not improper.

**Issue 2: Whether the ALJ failed to give proper weight to Plaintiff's treating physician**

Plaintiff next argues that the ALJ improperly discredited the opinions of his treating physician, Dr. Skaggs. However, when a medical expert's report is based entirely on the plaintiff's subjective complaints of pain, such a report is not entitled to controlling weight. *Butera v. Apfel*, 173 F.3d 1049, 1057 (7th Cir. 1999).

In Plaintiff's case, there is no objective medical evidence provided by Dr. Skaggs that suggests that Plaintiff was disabled. As discussed above, Dr. Skaggs consistently noted that on examination, there were no neurological or orthopedic abnormalities. Dr. Skaggs also repeatedly referred to Plaintiff's prognosis as "good," and did not note that Plaintiff needed an assistive device in order to walk. Instead, Dr. Skaggs simply referenced Plaintiff's subjective complaints of pain. In the absence of any medical tests that support Dr. Skaggs' opinions that Plaintiff was unable to perform any jobs and that

Plaintiff was permanently and completely disabled, the court concludes that the ALJ's decision not to give controlling weight to Dr. Skaggs' opinions is proper.

**Issue 3:      Whether the ALJ's decision failed to properly analyze Plaintiff's subjective complaints of pain**

Plaintiff's third argument is that the ALJ erred when he failed to follow 20 C.F.R. § 404.1529 -how we evaluate symptoms, including pain- and found that Plaintiff's complaints of pain were not fully credible.[2] As the Seventh Circuit has indicated, an ALJ's credibility determination will be upheld unless it is patently wrong. *Cannon v. Apfel*, 213 F.3d 970, 977 (7th Cir. 2000). In this instance, Plaintiff testified that he needed a cane in order to walk. However, both Dr. Skaggs and Dr. Budzenski indicated that Plaintiff did not require an assistive device in order to walk. As the regulations indicate, an ALJ is to take into consideration conflicts between a plaintiff's testimony and the statements of treating physicians. 20 C.F.R. § 404.1529(c)(4). Additionally, the ALJ determined that Plaintiff's accounts of his pain being so severe that he could hardly perform any activities were inconsistent with the facts. Specifically, the ALJ pointed out that Plaintiff could perform many household tasks and was even capable of mowing lawns for his landlord. In light of these inconsistencies, the court concludes that the ALJ's credibility determination was not patently wrong.

---

[2]Plaintiff made other minor objections to the ALJ's decision, but none of these merit much discussion. First, Plaintiff took umbrage with the ALJ's determination that he was a "younger individual." However, as a 47-year-old individual, Plaintiff did qualify as a younger individual. 20 C.F.R. pt. 404, subpt. P, App. 2. Second, Plaintiff argues that he can no longer perform his past work. However, the ALJ also found that Plaintiff could not perform his past work, but retained the residual functional capacity to perform sedentary work.

**Issue 4:    Whether the Vocational Expert's testimony was improper**

Finally, Plaintiff suggests that the VE's testimony at his hearing was tainted. Plaintiff mentions in his brief (at page 4) and in his request for review to the Appeals Counsel, (R. 9), that the vocational expert fell asleep during his hearing, and "was snoring loudly during the presentation of evidence by the Claimant." Certainly if the VE was asleep or snoring, the reliability of his testimony would be called into question.

Unfortunately for Plaintiff, the record of the hearing does not indicate that the VE fell asleep. Plaintiff was represented by competent counsel, who, we assume would have made some record of this unusual occurrence, or requested that the VE be reminded of Plaintiff's testimony if there was doubt about whether the VE had been made fully aware of Plaintiff's testimony. The VE's testimony is brief but direct and to the point. (R. 222-25). Plaintiff's counsel was given the opportunity to ask the VE additional questions, but declined to do so. (R. 225). Based on an examination of the record, the court cannot conclude that the VE's testimony was improper because he was asleep during a part of the hearing. There was no reversible error in this regard.

## VII.  Conclusion

The ALJ's decision is supported by substantial evidence.  The ALJ did not err in limiting the medical evidence to the relevant time period.  Additionally, the ALJ's determination that Plaintiff's treating physician's opinions did not deserve controlling weight was proper.  The ALJ's credibility determination was not patently wrong.  And, the record does not indicate that the VE's testimony was tainted.  The decision of the Commissioner is **AFFIRMED,** and this case is **DISMISSED, with prejudice.**

SO ORDERED.

Date:  March 27, 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copy to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Copy to:

KEVIN K. FULLER
605 N. Fulton Ave.
Evansville, IN 47710